**LAW OFFICE OF ADAM G. SINGER, PLLC**
Adam G. Singer (AS7294)
asinger@adamsingerlaw.com
60 E. 42nd Street, Suite 4600
New York, NY 10165
T: 212.842.2428

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES CASELLA,<br><br>   *Plaintiff*,<br><br> -against-<br><br><br>NELNET, INC. AND TRANS UNION LLC,<br><br>   *Defendants.* | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, James Casella ("Plaintiff" or "Airman Casella") by his attorneys, the Law Office of Adam G. Singer, PLLC, as and for his Complaint against Defendants Nelnet, Inc. ("Nelnet" or "Furnisher Defendant") and Trans Union LLC ("TransUnion" or "CRA Defendant"), alleges as follows:

**Preliminary Statement**

1. Defendant TransUnion is a nationwide consumer reporting agency ("CRA"). Defendant Nelnet is a company that services student loans for the Department of Education and a "furnisher of information" to TransUnion pursuant to the Fair Credit Reporting Act ("FCRA"). In this case, Plaintiff – New York Air National Guard Airman First Class James Casella – asserts causes of action to recover damages that he suffered, and continues to suffer for Defendants' violations of the FCRA and New York Fair Credit Reporting Act

1

("NY FCRA"). In particular, Plaintiff submitted numerous written disputes and complaints to TransUnion and Nelnet to contest Defendants' having inaccurately reported that Plaintiff was delinquent in his payments for two student loan accounts that Nelnet serviced ("Accounts" or "Nelnet Accounts"). In violation of the law, (a) Nelnet, upon information and belief, verified the delinquencies as accurate to TransUnion and (b) TransUnion, in turn, also verified the same inaccurate information and reported, and , until at least November 29, 2017, continued to report, these alleged delinquencies in the Nelnet tradelines ("Inaccurate Tradelines").[1] The Inaccurate Tradelines have had a devastating impact on Plaintiff's creditworthiness, and they caused him to suffer substantial anxiety and emotional distress.

2. In 2016, Plaintiff *sought and obtained* from Nelnet military forbearance while on active duty in the United States Armed Forces, specifically relieving Airman Casella of his obligation to make payments on the Accounts until January 2017. Nevertheless, Nelnet reported the Accounts to TransUnion and other CRAs as being at least 90 days late for December 2016.[2]

3. Plaintiff became aware of the Inaccurate Tradelines in January 2017 after receiving an alert from his CreditKarma account that his credit score had dropped. Airman Casella contacted Nelnet by telephone to complain about the Inaccurate Tradelines, explaining that Nelnet had granted his request for forbearance.

4. In February 2017, Nelnet acknowledged in writing to Airman Casella that it "had submitted a request to all national credit bureaus to remove… invalid delinquency(ies) [sic] from [Airman Casella's] credit report."

---

[1] As of this writing, TransUnion may still be reporting the Inaccurate Tradelines.

[2] As described herein, on credit reports issued on different dates, TransUnion reported Inaccurate Tradelines showing the Nelnet Accounts as delinquent by 90 days and 120 days.

5. In October 2017, after Plaintiff had (a) submitted two dispute letters to TransUnion (the second of which, Plaintiff also sent directly to Nelnet), and (b) filed complaints with the Consumer Financial Protection Bureau ("CPFB"), Nelnet sent Plaintiff a second letter, again acknowledging that it had reported invalid delinquencies for the Accounts and claiming that Nelnet had asked the nationwide CRAs to delete Inaccurate Tradelines about the Nelnet Accounts.

6. Nevertheless, TransUnion continued (and possibly continues) to report defamatory Inaccurate Tradelines reflecting invalid delinquencies in the two Nelnet Accounts on Plaintiff's credit report.

7. Plaintiff, therefore, brings this action to recover actual, statutory, and punitive damages, injunctive relief, and statutory attorney's fees pursuant to the FCRA, 15 U.S.C. § 1681 et seq., and the NY FCRA, NY General Business Law § 380 et seq. ("NY FCRA").

8. Congress enshrined within the FCRA the "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." §1681(a)(4).

9. Congress plainly stated the purpose of the FCRA, namely "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." §1681(b).

10. Defendant Nelnet violated the FCRA by:

    a. failing to conduct a reasonable investigation of Plaintiff's dispute;

    b. failing to review all relevant information provided by consumer reporting agency TransUnion and other CRAs; and

    c. failing to promptly modify, delete, or permanently block any information it could not verify as accurate, in violation of §1681s-2(b)(1).

11. Defendant TransUnion violated the FCRA (and analogous provisions of the NY FCRA) by:

    a. failing to conduct a reasonable reinvestigation of Plaintiff's dispute and delete or modify information that it could not verify as accurate, in violation of §1681i, and, upon information and belief, failing to perform certain other related duties pursuant to and in violation of that same provision; and

    b. failing to maintain procedures to ensure the maximum possible accuracy of the information it reported about Plaintiff, in violation of §1681e(b).

12. As a direct and proximate result of Defendants' negligent and willful actions, conduct, and omissions including, upon information and belief, publishing inaccurate derogatory information to third-parties, Plaintiff suffered cognizable actual damages (both economic and non-economic), including, but not limited to, credit denials and/or offers for credit at higher interest rates and other damage to Plaintiff's creditworthiness, damage to his reputation, emotional distress, embarrassment, aggravation, and frustration.

13. Each Defendant's willful violations of the FCRA entitles Plaintiff to an award of punitive damages.

## Jurisdiction and Venue

14. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p). This Court has supplemental jurisdiction of those state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## Parties

16. Plaintiff is an individual and "consumer" within the meaning of the FCRA (15 U.S.C. § 1681a(c)) and NY FCRA (NY GBL § 380-a(b)). Plaintiff resides at 13 Surrey Lane, Levittown, New York 11756.

17. Defendant Nelnet, Inc. is a Nebraska corporation duly authorized and qualified to do business in the State of New York and a "furnisher of information" within the meaning of the FCRA (15 U.S.C. § 1681s-2 et seq.).

18. Defendant TransUnion LLC is a Delaware limited liability company, duly authorized and qualified to do business in the State of New York, and is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. §1681a(f)) and the NY FCRA (G.B.L. §380-a(e)).

## Factual Background

*Origin of the Inaccurate Tradelines*

19. The Inaccurate Tradelines – showing Plaintiff was at least 90 days delinquent on the Nelnet Accounts in December 2016 – concern Airman Casella's student loans with the U.S. Department of Education (a) that Nelnet serviced, and (b) about which Nelnet furnished information to TransUnion and other CRAs. By letter dated August 27, 2017, Nelnet confirmed to Plaintiff that he had fully paid off the Accounts.

20. While on active duty in the United States Armed Forces, Plaintiff applied for and was granted military forbearance by Nelnet, which confirmed to Plaintiff in April 2016 that his next payment was not due until January 2017.

21. Even though Airman Casella had been granted forbearance based on his active duty status in the U.S. Armed Forces, Nelnet notified Airman Casella by sending him two letters, both dated October 15, 2016 , each of which stated that one of the two Nelnet Accounts was "60 or more days past due" ("Delinquency Notices"). Based on the Delinquency Notices, it appears that, while TransUnion and other CRAs report both Nelnet Accounts as account number 9000003150****), Nelnet internally designated one of the Accounts as account number: E84915xxxx, Group A, and the second Account as account number: E84915xxxx, Group B.

22. On or about October 29, 2016, Airman Casella called Nelnet to report the erroneous Delinquency Notices. At that time, Nelnet confirmed to Plaintiff that he had been granted military forbearance, and that his next payment was not due until January 2017.

23. In January 2017, as required by the terms of the forbearance agreed on between Airman Casella and Nelnet, Plaintiff resumed making payments on both Nelnet accounts.

24. By letter dated February 15, 2017, Nelnet confirmed to Plaintiff that, "[a]fter careful review of your account, we have submitted a request to all national credit bureaus to remove an invalid delinquency[ies] [sic] from your credit report" ("February 2017 Nelnet Error Admission Letter").

25. Based on the February 2017 Nelnet Error Letter, Plaintiff expected that the Inaccurate Tradelines on his credit reports would soon be permanently corrected. This did not happen.

26. In June 2017, after noting that his TransUnion credit score was lower than it should have been, Plaintiff concluded that either (a) Nelnet never sent the February 2017 Nelnet Error Letter to the CRAs, or (b) TransUnion had ignored the February 2017 Nelnet Error Letter. For this reason, after making several telephone calls to TransUnion, Airman Casella

submitted his first written dispute to TransUnion concerning the Inaccurate Tradelines on June 28, 2017 ("June 28 TransUnion Dispute Letter").

27. On July 11, 2017 ("July 11 TransUnion Notice"), TransUnion informed Plaintiff in writing that it had completed its investigation of the June 28 TransUnion Dispute Letter. The July 11 TransUnion Notice showed that TransUnion was still reporting one of the two Nelnet Accounts (both accounts reported on TransUnion credit reports as Account number 9000003150****) as 90 days delinquent in December 2016.

28. On July 12, 2017 ("July 12 TransUnion Notice"), TransUnion reported additional results from its investigation into Plaintiff's June 28 TransUnion Dispute Letter. The July 12 TransUnion Notice showed that TransUnion was still reporting the second of Plaintiff's two Nelnet Accounts (also referred to on TransUnion credit reports as account number 9000003150****) as 90 days delinquent in December 2016.

29. On September 16, 2017, TransUnion sent Plaintiff another notice of investigation results ("September 16 TransUnion Notice"). The September 16 TransUnion Notice (a) included investigation results for both disputed Nelnet Accounts, and (b) showed that TransUnion continued to report Inaccurate Tradelines, again reporting both Accounts as 90 days delinquent in December 2016.

30. Deeply concerned about his credit score, and frustrated by TransUnion's failure to delete the Inaccurate Tradelines even though TransUnion could not possibly have verified them as accurate if TransUnion had conducted a reasonable investigation, Airman Casella submitted complaints about Nelnet, TransUnion, and non-defendant Equifax to the CFPB on September 17, 2017 ("September CFPB Complaints").

31. Also on September 17, 2017, Plaintiff received a written confirmation from the CFPB ("CFPB Confirmation") that he had successfully submitted his complaints, and that the CFPB had transmitted the CFPB Complaints to Nelnet, TransUnion, and Equifax respectively.

32. On September 27, 2017, Airman Casella received an alert from CreditKarma, stating that – according to TransUnion – Plaintiff had "f[allen] behind on payments on 2 of [his] accounts." Examining his full September 27, 2017 CreditKarma report "provided by TransUnion," Plaintiff saw that, despite the (a) June 28 TransUnion Dispute Letter, (b) September CFPB Complaints, and (c) February 2017 Nelnet Error Admission Letter, TransUnion not only was still reporting Inaccurate Tradelines for the Nelnet Accounts, but that TransUnion now was reporting that the invalid delinquencies for both Nelnet Accounts had *increased* from 90 days to 90-119 days for December 2016. That same day, CreditKarma notified Plaintiff that his TransUnion credit score was 586 and that it "need[ed] work." The only negative items on Plaintiff's credit report were the Inaccurate Tradelines.

33. On October 12, 2017, Plaintiff – exasperated by the ordeal of repeatedly trying to repair the inaccuracies on his credit reports – submitted a *second* dispute ("October 12 Dispute Letter") to TransUnion and non-defendants Equifax and Experian.[3] Plaintiff also sent a copy of the October 12 Dispute Letter directly to Nelnet.

34. In the October 12 Dispute Letter, Plaintiff explained, among other things, that (a) he had obtained military forbearance, which relieved him of his obligation to make payments to Nelnet until January 2017, (b) he had never been late on any payment Nelnet, (c) he had

---

[3] Equifax and Experian are not Defendants in this action because they deleted Inaccurate Tradelines for the Nelnet Accounts soon after Plaintiff sent his October 12 Dispute Letter.

received the February 2017 Nelnet Error Admission Letter, (d) his "credit reports continue to [inaccurately] show that [he] was 90 days late [on his Nelnet Accouts] in December of 2016." Plaintiff also attached as Exhibits to the October 12 Dispute Letter a copy of the February 2017 Nelnet Error Admission Letter and excerpts from his credit reports showing Inaccurate Tradelines reflecting invalid delinquencies for Plaintiff's Nelnet Accounts.

35. On October 19, 2017, Nelnet sent Plaintiff another letter in which – just as with the February 2017 Nelnet Error Admission Letter – Nelnet informed Plaintiff that, "[a]fter careful review of your account, we have submitted a request to all national credit bureaus to remove an invalid delinquency[ies] [sic] from your credit report" ("October 2017 Nelnet Error Admission Letter").

36. In a notice dated October 25, 2017, TransUnion informed Airman Casella that TransUnion's investigation "of the dispute [Plaintiff] submitted is now complete" ("October 25 TransUnion Notice"). The October 25 TransUnion Notice states that both Nelnet Accounts were "verified as accurate."

37. On November 7, 2017 TransUnion sent Airman Casella yet another a notice of investigation results ("November 7 TransUnion Notice"). The November 7 TransUnion Notice included Inaccurate Tradelines that now showed both Nelnet Accounts as 120 days late in December 2016.

38. As of November 29, 2017 (the most recent TransUnion credit report obtained by Plaintiff), TransUnion continued to report the Inaccurate Tradelines on Plaintiff's credit report.

*Defendants' Failures to Comply with the FCRA and NYFCRA*

39. Defendants failed to conduct reasonable investigations and modify or delete Inaccurate Tradelines reflecting invalid delinquencies that could not be verified for the disputed Nelnet

Accounts within the timeframe permitted by applicable law. TransUnion failed to modify or delete the tradeline errors and, instead, continued to report the Nelnet Accounts as delinquent on Plaintiff's TransUnion credit report.

40. CRA Defendant TransUnion (a) failed to (i) perform reasonable investigations and/or reinvestigations of Plaintiff's dispute, as required by the FCRA, and (ii) to remove inaccurate information it could not have legitimately verified from Plaintiff's credit report, and (b) continued to report the Nelnet Accounts as delinquent on Plaintiff's credit report.

41. Furnisher Defendant Nelnet failed to perform reasonable investigations and/or reinvestigations of Plaintiff's dispute. Despite twice informing Plaintiff that it had asked TransUnion (and other CRAs) to delete the Inaccurate Tradelines from Plaintiff's credit reports, Nelnet has failed to modify or delete the Accounts, which it could not have legitimately verified. Instead, Nelnet has, upon information and belief, falsely verified Plaintiff's Nelnet Accounts to TransUnion as being substantially delinquent for the month of December 2016.

42. At all relevant times, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under Defendants' direct supervision and control.

43. The conduct of the Defendants, as well as that of their agents, servants and/or employees, was negligent, malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and Plaintiff's rights.

*Damages*

44. Because of Defendants' misconduct, Plaintiff suffered actual damages in the form of economic and non-economic harm, both of which are cognizable pursuant to the FCRA and NY FCRA.

45. Plaintiff has suffered actual damages in the form of financial harm and harm to his dignity arising from injury to his credit rating and reputation. Plaintiff will continue to suffer the same for an indefinite time in the future, all to Plaintiff's great detriment and loss.

46. Upon information and belief, Plaintiff's credit reports and file have been obtained from Defendant TransUnion and reviewed by prospective and existing credit grantors and extenders of credit. The Inaccurate Tradelines reflecting invalid delinquencies in the Nelnet Accounts have, upon information and belief, been a substantial factor in precluding Plaintiff from receiving credit offers and opportunities, known and unknown, and from receiving the most favorable terms in financing and interest rates for credit offers that were ultimately made.

47. Additionally, the inaccurate credit reporting cost Plaintiff substantial time and effort in pursuit of a corrected report, mental anguish and anxiety, stress, and interference with his ability to work and function normally.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF FCRA §1681s-2(b)**
**Against Nelnet (Furnisher of Information)**

48. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

49. Nelnet, the Furnisher Defendant, violated FCRA §1681s-2(b) by its acts and omissions, including but not limited to:

    a. failing to conduct a reasonable investigation of Plaintiff's dispute;

    b. failing to review all relevant information provided by CRA Defendant TransUnion; and,

    c. failing to promptly modify, delete, or permanently block any information it could not affirmatively verify as accurate, in violation of §1681s-2(b)(1).

50. Due to these violations of §1681s-2(b)(1) by Defendant Nelnet, Plaintiff suffered actual damages, including but not limited to loss of credit, damage to reputation, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

51. These violations of §1681s-2(b)(1) were willful, rendering the Furnisher Defendant, Nelnet, liable for actual damages, statutory damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

52. In the alternative, Nelnet was negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. §1681o.

## SECOND CAUSE OF ACTION
### VIOLATIONS OF FCRA §1681e(b) and §1681i
### Against TransUnion (Consumer Reporting Agency)

53. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

54. CRA Defendant TransUnion violated multiple sections of 15 U.S.C. §1681i by its acts and omissions, including, but not limited to, the following:

    a. failing to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the correct status of the disputed account or delete the item from Plaintiff's credit file in violation of §1681i(a)(1);

    b. failing to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4); and

    c. failing to properly delete the disputed inaccurate items of information from Plaintiff's credit files or modify item of information upon a lawful reinvestigation in violation of §1681i(a)(5).

55. CRA Defendant TransUnion violated 15 U.S.C. §1681e(b) by its conduct, acts and omissions, including, but not limited to, failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in the preparation of his credit report and credit files that it published and maintained.

56. Because of TransUnion's violations of §1681i and §1681e(b), Plaintiff suffered actual damages including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

57. These violations of §1681i and §1681e(b) were willful, rendering TransUnion liable for actual damages, statutory damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

58. In the alternative, TransUnion was negligent, entitling Plaintiff to recover actual damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681o.

## THIRD CAUSE OF ACTION
### VIOLATIONS OF NY FCRA §380-f and §380-j
**Against TransUnion (Consumer Reporting Agency)**

59. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

60. CRA Defendant TransUnion violated multiple sections of the NY FCRA (NY GBL §§380-380-u) by its acts and omissions including:

    a. failing to promptly reinvestigate Plaintiff's dispute to determine whether the disputed information is inaccurate and record the correct status of the disputed account in violation of §380-f(a);

    b. failing, after determining that the disputed information is in error or that it can no longer be verified, to promptly expunge the item and otherwise correct the file and refrain from reporting the item in subsequent consumer reports, in violation of §380-f(b); and

    c. failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in the preparation of his credit report and credit files that it published and maintained in violation of §380-j(e).

61. These violations of §380-f and §380-j(e) were willful, making TransUnion liable for actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to §380-l. Plaintiff also is entitled to injunctive relief restraining TransUnion from any further violations of Plaintiff's rights pursuant to the NY FCRA.

62. In the alternative, TransUnion was negligent, entitling Plaintiff to recover actual damages and costs and reasonable attorney's fees pursuant to §380-m, as well as injunctive relief restraining Defendants from any further violations of Plaintiff's rights pursuant to the NY FCRA.

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages against Defendants:

1. Awarding Plaintiff against each Defendant actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n and §1681o as well as, with regard to CRA Defendant TransUnion, NY GBL §380-l and §380-m;

2. Ordering TransUnion:

    a. to immediately and permanently (i) delete all inaccurate information from Plaintiff's credit reports and files, and (ii) cease reporting the inaccurate information to any and all persons and entities to whom TransUnion reports consumer credit information; and

    b. to send updated and corrected credit report information to all persons and entities to whom TransUnion has reported inaccurate information about Plaintiff within the last three years;

3. Enjoining CRA Defendant TransUnion from violating Plaintiff's NY FCRA rights; and

4. Such other and further relief as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

*/s/ Adam G. Singer*
**LAW OFFICE OF ADAM G. SINGER, PLLC**
Adam G. Singer (AS7294)
asinger@adamsingerlaw.com
60 E. 42nd Street, Suite 4600
New York, NY 10165
T: 212.842.2428